**Ex parte Lisa Michelle McNEIL, Appellant.**

**Lisa Michelle McNEIL, Relator,**

**v.**

**The Honorable Brian RAINS, Judge of the 176th District Court of Harris County, Texas.**

**Nos. 01–89–00012–CR, 01–89–00349–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 11, 1989.

James M. Leitner, Houston, for appellant, relator.

John B. Holmes, Dist. Atty., Linda A. West, Mike Anderson, Asst. Dist. Attys., Houston, for defendant, respondent.

Before DUGGAN, EVANS and O'CONNOR, JJ.

DUGGAN, Justice.

In the first case set out above, Lisa Michelle McNeil appeals from a habeas corpus proceeding in which she complains that she was held for over 90 days without being indicted and without bond.

In the second case, McNeil, as relator, filed an application for writ of mandamus to compel the trial judge to release her on the personal recognizance bond ordered by this Court in the habeas corpus proceeding. We have consolidated the two proceedings

and again order McNeil released on a personal recognizance bond.

McNeil was arrested June 13, 1988, and charged with the attempted capital murder of Matilda Edwards. The victim later died. On September 7, 1988, the State dismissed the attempted murder charge and charged McNeil with capital murder. The State requested and received continuances on three different bond hearings because it was not ready to proceed. Believing that the State would again be unprepared, McNeil filed her application for writ of habeas corpus with the trial court on December 8, 1988, requesting that it release her on a personal recognizance bond. After two more resets, the bond hearing was finally held on December 28, 1988, more than 180 days after McNeil was arrested. Even by this date, McNeil had not been indicted and the State was not ready to proceed. After conducting a hearing, the trial court ordered bond set at $100,000.

After McNeil filed her notice of appeal from the imposition of excessive bond, but before this Court ordered her release, the State elected to split the elements of the capital murder charge into two separate charges of murder and aggravated kidnapping. The State obtained indictments on the murder and aggravated kidnapping charges on February 17, 1989, and March 1, 1989, respectively. McNeil had been in custody for 249 days before her murder indictment and 261 days before her aggravated kidnapping indictment.

1. The Habeas Corpus Proceeding (No. 01–89–00012–CR).

In her sole point of error, McNeil contends that because (1) she had not been indicted within 90 days of her arrest, and (2) the State was not ready for trial, pursuant to Tex.Code Crim.P.Ann. art. 17.151 (Vernon Supp.1989), she should have been released on bond.

For the first time on appeal, the State challenges article 17.151 because the "stat-ute constitutes an encroachment into prosecutorial discretion by the Texas legislature," thus violating the separation of powers doctrine enunciated in art. II, § 1 of the Texas Constitution. This contention was not advanced in the court below and need not be reached on appeal.

Article 17.151 states, in pertinent part: "A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the State is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony ... "

■ Readiness for trial should be determined in accordance with *Pate v. State*, 592 S.W.2d 620 (Tex.Crim.App.1980),[1] which holds that the existence of a charging instrument is an element of preparedness. Where there is no indictment, the State cannot announce ready for trial. *Pate v. State*, 592 S.W.2d at 621.

At the hearing on the writ of habeas corpus, the trial judge asked the prosecutor if he had any argument concerning the issue of bail. The prosecutor replied, "Yes. We just have no evidence." Later, the prosecutor stated, "I understand that the State is—does not have an indictment in this case, and the reasons for that are not relevant here."

■ McNeil was incarcerated more than 90 days, and the State was not ready for trial. She must therefore be released on bond.

The amount of the bond McNeil must furnish is also governed by article 17.151, which provides that McNeil "be released ... by reducing the amount of bail [she] can pay." The Texas Attorney General has interpreted this phrase to mean "that bail must be reduced to an amount the detainee

---

**1.** In *Pate*, the indictment was dismissed and the defendant released because the State was not ready for trial pursuant to Tex.Crim.Code P. 32A.02 (Vernon 1978) (the Speedy Trial Act).

While the Speedy Trial Act has been held unconstitutional, *see Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App.1987), the determination of the State's readiness for trial has not been affected.

can afford to pay." *See,* Attorney General Opinion No. H–1130 (1978).

The record reflects that the trial court found McNeil indigent and appointed her counsel. At the writ hearing, McNeil testified that her financial situation has not changed since the indigency hearing. This is not surprising, considering she has been continually incarcerated since June 13, 1988. McNeil also testified that she is married and has one child. Her husband works for Popeye's Fried Chicken as an assistant manager. She has no real property she could sell or mortgage to make a bond. In response to direct examination questions concerning her finances, McNeil responded:

Q: Do you feel that as far as what the percentage costs would be to make a bond—a $5000 bond on a regular surety bond, which would be 10% or 15% of that, do you believe that you and Mr. McNeil could raise the money to make that type of bond?

A: No, I don't.

Q: Do you believe that you could even raise the collateral to back up a $5000 bond?

A: No, sir.

Q: Are you without access to any funds at all?

A: No, sir. I don't have any funds.

It is clear to us that, based on this testimony, McNeil has sustained her burden of proof concerning her inability to post a $100,000 bond.

Where a detainee has no funds available to her and the State does not indict her within 90 days, she must be released on a personal recognizance bond. *Kernahan v. State,* 657 S.W.2d 433, 434 (Tex.Crim.App. 1983) (en banc). In light of McNeil's financial condition and the State's failure to indict her within 90 days of arrest, we conclude the trial court erred in refusing to release her on a personal recognizance bond. To hold otherwise would allow the State to arrest McNeil, charge her with a crime, and then simply leave her in jail without bothering to indict her.

We order McNeil released on a personal recognizance bond in cause numbers 510,-128 and 524,096, and any other cause(s) for which she may be charged arising from this alleged criminal episode.

### 2. The Mandamus Proceeding (No. 01–89–00349–CV).

When this Court ordered McNeil released on March 16, 1989, the district court granted bond on the murder charge only. McNeil continues to be held without bond on the kidnapping charge growing out of the same criminal episode. Having already been granted relief by our writ of habeas corpus, McNeil was left with no means to procure her release but to file an application for writ of mandamus to enforce the order of this Court.

An appellate court has authority to issue writs of mandamus and all other writs necessary to enforce its jurisdiction. Tex. Gov't Code Ann. sec. 22.221(a) (Vernon 1987). *See, Wolff v. Thornton,* 670 S.W.2d 764 (Tex.App.—Houston [1st Dist.] 1984, no writ), and *Allen v. Guarino,* 635 S.W.2d 129 (Tex.App.—Houston [1st Dist.] 1981, no writ).

The post-habeas corpus circumstances of the present case are similar to those in *Berry v. Hughes,* 710 S.W.2d 600 (Tex. Crim.App.1986), which we find to be controlling. Berry was convicted of aggravated robbery, and was sentenced to life imprisonment and a $10,000 fine. The Court of Criminal Appeals granted Berry's request for habeas corpus relief, held that the jury verdict was void and could not be reformed due to the inclusion of an unauthorized fine, and ordered Berry released to stand trial for the original charge. Instead of releasing Berry to stand trial upon receipt of the appellate court's mandate, the trial court reformed Berry's judgment and sentence to delete the unauthorized fine. The judgment and sentence had already been set aside by the appellate court, and therefore could not be reformed by the trial court. In granting mandamus relief, the Court of Criminal Appeals held that the earlier appellate court's order "left the trial court with no discretion to do anything but 'perform the ministerial duty of carrying out the mandate of [the] court.'" *Berry,*

710 S.W.2d at 601, quoting *State ex rel. Vance v. Hatten,* 508 S.W.2d 625, 628 (Tex. Crim.App.1974).

■ The order of the Court releasing McNeil on personal bond for the original charge of capital murder clearly should have been applied to the two new charges of murder and aggravated kidnapping which grew out of the original capital murder charge. The legal maneuvering by the State to obtain two indictments from one criminal episode does not alter the fact that McNeil was held for over 90 days before she was indicted on *any* charge.

By refusing to release McNeil on personal recognizance bond for all charges that grew out of the same criminal episode, respondent has ignored a specific order and mandate of this Court—that McNeil be released on personal recognizance bond. Issuance of a writ of mandamus is therefore necessary in order to protect this Court's jurisdiction and to insure that the mandate of this Court will not be thwarted. *State ex rel. Vance v. Clawson,* 465 S.W.2d 164, 169 (Tex.Crim.App.1971).

Accordingly, the respondent is directed to release McNeil immediately on personal recognizance bonds. We are confident that Judge Rains will comply with this order without the necessity of the formal issuance of the writ of mandamus. Accordingly, the writ of mandamus will issue only if he refuses to do so.